# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| DJUAN WASHINGTON, | ) |
| Petitioner, | ) |
| v. | ) CIVIL ACTION NO. 1:19-00281 |
| D.L. YOUNG, Warden, | ) |
| Respondent. | ) |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Petitioner's Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241 (Document No. 2), filed on April 15, 2019; (2) Petitioner's "Motion to Request that the Government Show Cause Order is Denied, and Grant that Petitioner is Awarded Time Spent in Custody" (Document No. 16), filed on July 22, 2019; and (3) Petitioner's Motion for *Nunc Pro Tunc* Designation (Document No. 19), filed on December 26, 2019.[1] By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.)

## PROCEDURE AND FACTS

Petitioner was incarcerated on Michigan state charges until he was paroled on March 24, 2015 (Case Nos. 06-004269-01-FC and 06-004504-FC). (Document No. 13, p. 23.) On July 24, 2015, Petitioner was arrested by West Virginia state authorities on drug and firearm charges

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

(Cabell County Case No. 15B-802). (Id., pp. 23 and 25.) On March 22, 2016, Petitioner was released on bond by West Virginia state authorities and turned over to Michigan state authorities in relation his alleged parole violations in Wayne County, Michigan (Wayne County Case Nos. 06-004269-01-FC and 06-004504-01-FC). (Id., pp. 18 and 23.) On April 5, 2015, Petitioner was indicted in the Southern District of West Virginia for federal drug and firearm charges in Case No. 3:16-cr-00063. (Id., pp. 27 – 29.) On May 24, 2016, Petitioner was borrowed pursuant to a Federal Writ of *Habeas Corpus Ad Prosequendum* from the State of Michigan. (Id., pp. 31 – 32.) On January 9, 2017, Petitioner was sentenced in the Southern District of West Virginia to a 46-month term of incarceration to be followed by a three-year term of supervised release. (Id., pp. 34 – 39.) Petitioner was returned to Michigan state custody on February 1, 2017. (Id., pp. 31- 32.) On February 14, 2017, Petitioner's parole was revoked by state authorities in Wayne County, Michigan (Case Nos. 06-004269-01-FC and 06-004505-01-FC). (Id., p. 41.) On March 29, 2017, Petitioner paroled to exclusive federal custody. (Id., p. 43.) On May 2, 2017, Petitioner's West Virginia state charges in Cabell County were dismissed (Case No. 15B-802). (Id., p. 25.)

On April 15, 2019, Petitioner filed his Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241 and Memorandum in Support. (Document Nos. 2 and 3.) Petitioner alleges that the BOP is improperly calculating the term of his imprisonment. (Id.) Specifically, Petitioner appears to contend that the BOP is improperly denying him Federal credit for the time he served in State custody. (Id.) Petitioner states that he was held in State custody in West Virginia from July 24, 2015 until March 21, 2016. (Id.) Petitioner contends that he was taken into the custody of Michigan state authorities on March 21, 2016, concerning his parole violation. (Id.) Petitioner alleges that he was taken in Federal custody on or about June 15, 2016, and remained in Federal custody until January 9, 2017. (Id.) Petitioner explains he was then returned

2

to the custody of Michigan state authorities, where he was subsequently "re-paroled to a twenty-four-month parole which began March 29, 2017 ending March 29, 2019." (Id.) Therefore, Petitioner requests federal credit from July 24, 2015 to March 21, 2016, and May 24, 2016 to February 1, 2017. (Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of page one from the "Stipulation of Facts" as filed in United States v. Washington, Criminal Action No. 3:16-00063 (S.D.W.Va.) (Document No. 3-1, p. 1.); (2) A copy of pertinent pages from the Docket Sheet regarding his Federal criminal case (Criminal Action No. 3:16-00063) (Id., pp. 2 – 4.); (3) A copy of Petitioner's "Michigan Parole Board Order for Parole" (Id., p. 5.); (4) A copy of Petitioner's "Sentence Monitoring Computation Data As Of 01-08-2018" (Id., pp. 6 – 7.); (5) A copy of Petitioner's "Request for Administrative Remedy Informal Resolution Form" dated May 30, 2017 (Id., p. 8.); (6) A copy of Petitioner's "Request for Administrative Remedy" dated March 30, 2018 (Remedy ID No. 936784-F1) (Id., p. 9.); and (7) A copy of Petitioner's "Request for Administrative Remedy" dated June 13, 2017 (Remedy ID No. 906036-F1) (Id., p. 10.)

By Order entered on May 6, 2019, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 7.) On June 18, 2019, Respondent filed his Response to the Order to Show Cause. (Document No. 13.) Respondent argues that Petitioner's Petition should be denied based on the following: (1) "Petitioner failed to exhaust his administrative remedies" (Id., pp. 3 – 5.); (2) "Petitioner is not entitled to credit towards his federal sentence because the credit was applied to his Wayne County, Michigan sentences" (Id., pp. 5 – 8.); (3) "Petitioner is not entitled to credit towards his federal sentence from May 24, 2016 through February 1, 2017 because he was merely borrowed from the

state of Michigan pursuant to a writ of habeas corpus ad prosequendum" (Id., pp. 8 – 10.).

In support, Respondent attaches the following Exhibits: (1) The Declaration of Edith Rohmer, Management Analyst (Id., pp. 14 – 16.); (2) A copy of Petitioner's Basic Information Sheet from the Michigan Department of Corrections (Id., p. 18.); (3) A copy of Petitioner's Judgments of Sentence Commitment for the State of Michigan (Id., pp. 20 – 21.); (4) A copy of the Michigan Department of Corrections Offender Movement Report (Id., p. 23.); (5) A copy of the Boundover Dismissal Order for the Circuit Court of Cabell County, West Virginia (Id., p. 25.); (6) A copy of Petitioner's Indictment as filed in the United States District Court for the Southern District of West Virginia in Criminal Action No. 3:16-00063 (Id., pp. 27 – 29.); (7) A copy of USMS Form 129 (Id., pp. 31 – 32.); (8) A copy of Petitioner's Judgment Order as filed in the United States District Court for the Southern District of West Virginia in Criminal Action No. 3:16-00063 (Id., pp. 34 – 39.); (9) A copy the Michigan Department of Corrections Parole Violation Formal Hearing Summary and Recommendation (Id., p. 41.); (10) A copy of the Michigan Department of Corrections and Michigan Parole Board Order for Parole (Id., p. 43.); (11) A copy of Michigan's Policy Directive for Dead Time Computation (Id., p. 45.); (12) The Declaration of Tiffanie Little, Legal Assistant for the BOP's Mid-Atlantic Regional Office (Id., pp. 47 – 49.); (13) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" (Id., pp. 51 – 52.); (14) A copy of Petitioner's "Administrative Remedy Generalized Retrieval for Remedy ID No. 906036-R1 (Id., pp. 54 – 55.); and (15) A copy of Petitioner's "Administrative Remedy Generalized Retrieval for Remedy ID No. 936784-F1 (Id., pp. 57 – 58.).

By Order and Notice entered on June 18, 2019, the undersigned advised Petitioner of his right to file a Reply to Respondent's Response. (Document 14.) On July 22, 2019, Petitioner filed a "Motion to Request that the Government Show Cause Order is Denied, and Grant that Petitioner

is Awarded Time Spent in Custody." (Document No. 16.) Petitioner argues that he "followed through all the administrative remedy process until his unit team provided him with the attached memo stating that Grand Prairie had made the final decision not to award the pre-detention time, and that the remedy process ends at Grand Prairie." (Id., p. 2.) Petitioner states that he was arrested on July 24, 2015 and held by the State of West Virginia (Cabell County) until March 22, 2016, when he was released on bond to Michigan. (Id., p. 3.) Petitioner argues that "[i]t may appear that Petitioner may had been under the jurisdiction of the State of Michigan first because the State of West Virginia gave him bond to be turned over to the State of Michigan." (Id.) Petitioner, however, contends that "exclusive jurisdiction always remained in the State of West Virginia because the Federal jurisdiction charged the Petitioner with the same charge that the State of West Virginia gave him bond on one month later on April 5, 2016, while he was awaiting resolution of parole violations in Michigan." (Id.) Thus, Petitioner requests an Order granting him "pre-detention time from July 24, 2015 to March 22, 2016 (8 months)." (Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of a letter dated March 14, 2018, from BOP Management Analyst Mandee Eanes denying Petitioner's request for *nunc pro tunc* designation (Document No. 16-1, p. 1.); (2) A copy of a letter dated July 31, 2017, from BOP Management Analyst Mandee Eanes denying Petitioner's request for *nunc pro tunc* designation (Id., p. 2.).

On August 28, 2019, Petitioner filed his Supplemental Reply. (Document No. 17.) Petitioner states that Respondent acknowledges in his Response that "the eight months of jail time credit that was taken from me is owed to me." (Id.) On December 26, 2019, Petitioner filed a Motion for *Nunc Pro Tunc* Designation. (Document No. 19.) Petitioner argues he should be granted *nunc pro tunc* designation for the 8 months he waited pre-trial from July 24, 2015 until

March 16, 2016. (Id.) Petitioner also argues he should be granted "nunc pro tunc for the 9 months he waited in federal pre-trial from May 24, 2016 until February 1, 2017 after the United States District Court for the Southern District of West Virginia took jurisdiction over the state charges." (Id.) Thus, Petitioner concludes he should be granted credit for 17 months. (Id.) In support, Petitioner attaches a copy of his Affidavit. (Id., pp. 7 – 8.)

## ANALYSIS

1. **Failure to Exhaust:**

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement.

Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

Respondent argues that Petitioner's Section 2241 Petition should be denied because Petitioner did not exhaust his administrative remedies. (Document No. 13, pp. 3 - 5.) Respondent acknowledges that Petitioner filed Administrative Remedy ID Nos. 906036 and 936784 challenging the computation of his sentence. (Id.) Respondent, however, argues that Petitioner did not complete the administrative remedy process. (Id.) In support, Respondent submits the Declarations of Tiffanie Little, a Legal Assistant for the BOP. (Id., pp. 47 - 49.) Ms. Little declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Specifically, Ms. Little states as follows in her Declaration:

> 10. Related to his current claim, Petitioner filed Remedy ID No. 906036-F1 at the institutional level on June 20, 2017 seeking credit for time spent incarcerated prior to the imposition of his federal sentence. The remedy was closed and a response provided on July 5, 2017.
>
> 11. On August 7, 2017, Petitioner appealed the response to the region with Remedy ID No. 906036-R1. The administrative remedy was rejected the same day because Petitioner failed to sign his remedy form. He was given five days to resubmit his remedy.
>
> 12. On April 11, 2018, Petitioner filed Remedy ID No. 936784-F1 at the institutional level, again seeking credit for time spent incarcerated prior to the commencement of his federal sentence. This remedy was rejected because Petitioner had already filed a remedy with the same subject matter at the institutional level.
>
> 13. Petitioner has not further pursued any remedies relating to his allegations in this case. Accordingly, he has not exhausted his Administrative Remedies in relation to his claim in this case.

(Id., pp. 48 – 49.) As Exhibits, Ms. Little attaches a copy of Petitioner's Administrative Remedy History and Administrative Remedy ID Nos. 906036 and 936784. (Id., 50 - 58.)

In Response, Petitioner argued that he "followed through all the administrative remedy process until his unit team provided him with the attached memo stating that Grand Prairie had

made the final decision not to award the pre-detention time, and that the remedy process ends at Grand Prairie." (Document No. 16, p. 2.) As Exhibits, Petitioner attaches the following: (1) A copy of a letter dated March 14, 2018, from BOP Management Analyst Mandee Eanes denying Petitioner's request for *nunc pro tunc* designation (Document No. 16-1, p. 1.); (2) A copy of a letter dated July 31, 2017, from BOP Management Analyst Mandee Eanes denying Petitioner's request for *nunc pro tunc* designation (Id., p. 2.).

      Based upon a review of the record, the undersigned finds that Petitioner failed to fully exhaust his available administrative remedies. Petitioner does not dispute the validity of the information contained in Ms. Little's Declaration. Petitioner merely argues that he received a response from Management Analyst Eanes that was a "final decision not to award the pre-detention time, and that the remedy process ends at Grand Prairie." (Document No. 16.) Petitioner attaches as an Exhibit, a copy of the response from Management Analyst Eanes. A review of the Exhibit, however, contradicts Petitioner's above assertion. In Management Analyst Eanes' response dated March 14, 2018, she specifically advised Petitioner as follows: "If you are not satisfied with the result of his determination you may utilize the administrative remedy process." (Id.) The record clearly reveals that Petitioner did not fully exhaust the administrative remedy process. As stated above, the administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. The undisputed record reveals that Petitioner never appealed his claim to General Counsel or obtained a ruling from General Counsel. Since Petitioner failed to properly exhaust administrative remedies with respect to his claims in this matter, the undersigned concludes, and hereby respectfully recommends, that this matter should be dismissed. Notwithstanding Petitioner's failure to exhaust, the undersigned will briefly consider the merits of his claims.

**2.      Petitioner's Federal sentence did not commence until March 29, 2017.**

Title 18 U.S.C. § 3585(a) provides that a Federal sentence does not begin to run until the defendant is received into custody for service of the sentence. Generally, the first arresting sovereign acquires primary jurisdiction "for purposes of trial, sentencing, and incarceration. However, the sovereign with priority of jurisdiction . . . may elect under the doctrine of comity to relinquish it to another sovereign." United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980). Primary jurisdiction can be relinquished by operation of law, such as bail release, expiration of sentence, or dismissal of charges. United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005). Primary jurisdiction is not relinquished when an inmate is borrowed pursuant to a writ of *habeas corpus ad prosequendum*. United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998)(citing Thomas v. Whalen, 962 F.2d 358, 361, n. 3 (4th Cir. 1992)("A federal sentence does not begin to run . . . when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.").

West Virginia state authorities arrested Petitioner on July 24, 2015, thereby obtaining primary jurisdiction. West Virginia state authorities, however, relinquished primary jurisdiction on March 22, 2016, when Petitioner was released on bond. See Grier v. Purdue, 2014 WL 3823999, * 3 (N.D.W.Va. Aug. 4, 2014)(citing United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005)(A sovereign may relinquish primary jurisdiction by "releasing a defendant on parole, granting bail, or dismissing pending charges.") Michigan state authorities thereby obtained primary jurisdiction on March 22, 2016, because when Petitioner was released on bond by West Virginia state authorities, he was turned over to Michigan state authorities. Petitioner was then temporarily

transferred into Federal custody on May 23, 2016, pursuant to a Writ of *Habeas Corpus ad Prosequendum* for proceedings upon his Federal charges. Michigan state authorities did not relinquish primary jurisdiction until Petitioner was paroled and released to Federal authorities on March 29, 2017. (Document No. 12, p. 33.) Therefore, Petitioner's Federal sentence did not commence until March 29, 2017, when Petitioner was received into Federal custody.

**3.     Petitioner is not entitled to additional prior custody credit.**

Title 18 U.S.C. § 3585(b) provides as follows:

**(b) Credit for prior custody. --** A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences - -

**(1)** as a result of the offense for which the sentence was imposed; or

**(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not be credited against another sentence.

The United States Supreme Court has held that under Section 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." United States v. Wilson, 503 U.S. 329, 337, 112 S.Ct. 1351, 1355 – 1356, 117 L.Ed.2d 593 (1992); also see United States v. Mojabi, 161 F.Supp.2d 33, 36 (D.Mass. 2001)(holding that "[s]ection 3885(b) prohibits 'double credit,' i.e. awarding credit for presentence time served against one sentence if that time has already been credited against another sentence"). Notwithstanding the limitation imposed under Section 3585(b), the Fifth and Seventh Circuits indicated that a petitioner was entitled to time spent in *presentence* State custody that was attributable to the federal offense even if the petitioner was given credit on his State sentence for that period of time. See Kayfez v. Gasele, 993 F.2d 1288, 1290 (7th Cir. 1993)(even though defendant received state credit for his presentence custody, the

11

court found defendant was entitled to credit against his federal sentence for all his presentence incarceration because defendant's sentences were concurrent and crediting only the state sentence would not reduce defendant's actual imprisonment); Willis v. United States, 438 F.2d 923, 925 (5th Cir. 1971)(reasoning that even though the State gave petitioner credit for his presentence custody, petitioner did not receive a benefit because his State sentence expired before his federal sentence). Pursuant to Kayfez, the BOP grants prior custody credit, even if it results in a double-credit toward a State sentence, when three conditions are met: (1) a prisoner's State and Federal sentence are run concurrently; (2) the raw effective full term date of the State term is later than the raw effective full term date of the Federal term; and (3) the State raw full term date, after application of qualified State presentence time, is reduced to a date that is earlier than the Federal raw effective full term date. See Program Statement 5880.28. If the above conditions are met, credit is awarded towards the Federal sentence in the amount that will adjust the Federal raw full term release date to equal the State sentence's effective full term date. The BOP, however, is not required to award Federal pre-sentence credit for time served after the commencement of the State sentence. Kayfez v. Casele, 993 F.2d 1288, 1290 (7th Cir. 1993).

In the instant case, the Court finds that Petitioner is not entitled to receive *additional* prior custody credit. First, Petitioner's State and Federal sentence were not run concurrently. Second, Petitioner received custody credit towards his Michigan state parole revocation sentences (Case Nos. 06-004269-01-FC and 06-004504-FC) from July 24, 2015 (dated he was arrested by West Virginia state authorities) through March 29, 2017 (date he was released on parole). Thus, Petitioner received State credit for the following time periods: (1) From July 24, 2015 through March 21, 2016; and (2) From May 24, 2016 through February 1, 2017.

To the extent Petitioner is relying upon Kayfez and Willis, such is misplaced because the time he is seeking credit for is not "*Kayfez/Willis* time." See Grigsby v. Bledsoe, 223 Fed.Appx. 486, 489 (7th Cir. 2007). A Michigan parolee that commits a new offense while on parole is not entitled to credit for time served in jail before sentencing on the new offense. People v. Seiders, 262 Mich.App. 702, 705, 686 N.W.2d 821 (2004). Such jail credit is applied exclusively to the sentence from which the parole was granted. Id. Despite an individual's physical release from prison in Michigan, an individual on parole remains in the legal custody of the Department of Corrections. See MCL 791.238(1). Thus, when a parolee commits another crime resulting in arrest and detention, the time of detention continues to accrue towards the completion of the originally imposed sentence because the parolee has not truly been released. See Id.; also see MCL 768.7a(2). Accordingly, Petitioner is seeking Federal credit for time served *after* the commencement of his Michigan state sentence. Petitioner received credit towards his original Michigan state sentence for the time period of July 24, 2015 through March 29, 2017 (Case Nos. 06-004269-01-FC and 06-004504-FC). The BOP may not grant prior custody credit for time that has been credited against another sentence. See DeJesus v. Zenk, 2010 WL 1141395 (3rd Cir. Mar. 25, 2010)(slip copy)(stating "that the reasoning in the '*Willis/Kayfez* line of cases' does not permit federal credit for time served 'after the state sentence was imposed but before the federal sentence was pronounced'")(citing Rios v. Wiley, 201 F.3d 257, 273 n. 13 (3rd Cir. 2000), *superseded on other grounds*, United States v. Saintville, 218 F.3d 246 (3rd Cir. 2000)); United States v. Goulden, 54 F.3d 774 (4th Cir. 1995)(unpublished opinion)(holding that credit is only available for time spent in custody which has not been credited against another sentence); United States v. Brown, 977 F.2d 574 (4th Cir. 1992)(finding that "a defendant may receive credit against his federal sentence

for time spent in official detention prior to the date his sentence commences unless it has been credited against another sentence"). Based on the foregoing, the undersigned finds that Petitioner is not entitled to any additional prior custody credit.

4. *Nunc Pro Tunc* **Designation:**

Despite the undersigned's above findings, a Petitioner may request *nunc pro tunc* designation. Petitioner appears to request *nunc pro tunc* designation for both pre-sentence custody, and post-sentence custody. (Document Nos. 16 and 19.) As stated above, a Federal sentence may not begin to run until the date it is imposed. To the extent Petitioner is requesting *nunc pro tunc* designation concerning pre-sentence custody, his request is denied. To the extent Petitioner is requesting *nunc pro tunc* designation for the time period of January 9, 2017 (the date of the imposition of his Federal sentence) through March 29, 2017 (date he was released from his State sentences on parole), the undersigned will consider this claim.

Upon special circumstances, the Attorney General or the BOP may enter a *nunc pro tunc* designation allowing a federal sentence to begin to run while an inmate is in State custody. See United States v. Evans, 159 F.3d 908, 911-12 (4th Cir. 1998)(finding that a federal sentence may commence while an inmate is in state custody "if and when the Attorney General or the Bureau of Prisons agree to designate the state facility for service of that federal sentence"). Title 18 U.S.C. § 3621(b) provides as follows:

> **(b) Place of imprisonment.** The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –

14

>    **(1)** the resources of the facility contemplated;
>
>    **(2)** the nature and circumstances of the offense;
>
>    **(3)** the history and characteristics of the prisoner;
>
>    **(4)** any statement by the court that imposed the sentence --
>
>    >    **(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>    >
>    >    **(B)** recommending a type of penal or correctional facility as appropriate; and
>
>    **(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). Although the BOP must consider an inmate's request for a *nunc pro tunc* designation, the BOP is not obligated to grant the designation. See Barden v. Keohane, 921 F.2d 476 (3rd Cir. 1990).

Based upon a review of the record, the Court finds that the BOP appropriately considered Petitioner for *nunc pro tunc* designation. (Document No. 16-1, p. 1.) Upon consideration of the criteria set forth in Section 3621(b), the BOP considered the factors under Section 3621(b) in denying Petitioner's request for *nunc pro tunc* designation. (Id.) The record reveals that *nunc pro tunc* designation was denied based upon "the nature and circumstances of the offense," Petitioner's criminal history, and the statement by the court that imposed the federal sentence. In considering the statement by the court that imposed the federal sentence (Factor 4), the BOP noted as follows:

>    Under factor (4), the federal judgment was silent on whether your sentence should run consecutively or concurrently to any other sentence. Pursuant to 18 U.S.C. § 3584(a), multiple terms of imprisonment imposed at different times run consecutively unless the Court orders that the terms are to run concurrently. Nevertheless, the federal sentencing Court was contacted for a position on a retroactive designation. In responding, the Court advised the federal sentence should run consecutive to the state sentence.

(Id.) Based upon the foregoing, the undersigned finds that Respondent appropriately considered Petitioner's request for *nunc pro tunc* designation pursuant to 18 U.S.C. § 3621(b).

For the reasons set forth above, the undersigned respectfully recommends that the District Court deny Petitioner's Section 2241 Petition (Document No. 2), "Motion to Request that the Government Show Cause Order is Denied, and Grant that Petitioner is Awarded Time Spent in Custody" (Document No. 16), and Motion for *Nunc Pro Tunc* Designation (Document No. 19).

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241 (Document No. 2), **DENY** Petitioner's "Motion to Request that the Government Show Cause Order is Denied, and Grant that Petitioner is Awarded Time Spent in Custody" (Document No. 16), **DENY** Petitioner's Motion for *Nunc Pro Tunc* Designation (Document No. 19), and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: May 7, 2020.

Omar J. Aboulhosn
United States Magistrate Judge